In re Arne G. SVENDSEN, Debtor.

Bankruptcy No. 8200892.

United States Bankruptcy Court,
D. Rhode Island.

Nov. 10, 1983.

Charles J. Levesque, Middleton, R.I., for claimant.

Leon Aronson, Quincy, for debtor.

John Boyajian, Providence, R.I., for trustee.

## DECISION AND ORDER ON DEBTOR'S OBJECTION TO CLAIMS NO. 10 AND 11

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Marie Antoinette Cesareo has filed two proofs of claim in this Chapter 13 case, to which the debtor, Arne G. Svendsen, objects. The debtor did not appear personally at the hearings, but was represented by counsel.[1]

---

1. This debtor has frequently failed to appear at hearings, and has, in general, delayed and obstructed matters pertaining to his Chapter 13. Because of this pattern of lack of cooperation,

In Claim No. 10 Cesareo alleges that Svendsen owes her $28,081.77 for money which she advanced or expended in his behalf. She also filed a second proof of claim in the amount of $50,000.00 (Claim No. 11) for goods provided and services rendered to or on behalf of Svendsen. Cesareo submitted a document (Claimant's Exhibit D) at the hearing which reduced Claim No. 11 to $32,400.00.

The debtor's position is summarized in a "Statement of Admission and Denial," filed in response to Cesareo's request for admissions:

> The Debtor, Arne G. Svendsen, admits that ... Antoinette Cesareo, was in fact his designated attorney-in-fact, and, in that capacity, incurred expenses on his behalf but not in the amount [that she] contends. At no time, however, did the Debtor agree to pay the Plaintiff compensation ... for services she rendered in behalf of the estate.

Cesareo's proofs of claim do not "constitute prima facie evidence of the validity and amount of the claim[s]" under Bankruptcy Rule 3001(f) because they fail to "set forth all the necessary facts to establish the claim[s]." 3 Collier on Bankruptcy ¶ 502.02 at 502–22 (15th ed. 1983). Also, examination of the claimant by the trustee and the debtor's attorney raised questions as to the validity and/or amount of the claims. Accordingly, the claimant has the burden of substantiating the basis as well as the amount of her claims. *Id.*

### CLAIM NO. 10

Claim No. 10, in the amount of $28,081.77, is supported in part by a lengthy record maintained by Cesareo in which she itemized disbursements and credits. (Claimant's Exhibits A and B.) Although this is an informal record, unsupported by evidence of receipts or checks, with numerous entries designated only as "Cash," neither the debt-

---

the Court finds no particular significance in his failure to appear at the hearing on the debtor's objection to Cesareo's claims.

or nor the trustee takes issue with the record or with the figure of $17,924.00, which was the balance when Cesareo ceased making disbursements on behalf of Svendsen in December 1982.

■ Cesareo then adds to this balance, however, three unsubstantiated items totalling in excess of $10,000.00, which are disputed. First, she seeks $2,800.00 for "interest paid on loan of $15,000.00 (Dec. 1982)." (Claimant's Exhibit B.) She testified that $2,800.00 represents interest paid on a loan (which she inconsistently describes as either a $15,000.00 or a $20,000.00 loan) used as a down payment on her own home. She alleges that this borrowing would have been unnecessary had she not been depleting her own funds on behalf of Svendsen; and that, therefore, she is entitled to reimbursement for interest paid on this loan. Cesareo concedes, however, that Svendsen was unaware that she had taken out the loan, and the Court finds that there was no express or implied agreement between the parties that Svendsen would reimburse the claimant for interest paid by Cesareo on a loan taken out in her name. Consequently, no part of the interest claim in the amount of $2,800.00 is allowed.

On similar grounds we disallow a claim for "interest lost on capital" in 1980–82, totalling $3,857.77. (Exhibit B.) There was no agreement that Svendsen would compensate Cesareo for interest that would have been earned had she not allegedly used funds from her own savings to pay Svendsen's debts. There is also a total failure of proof as to this part of the claim.

Cesareo also alleges that Svendsen owes her $3,500.00 for "loss of equity from sale of jewelry and gold coins to satisfy bills 1980–82." (Exhibit B.) She testified that she sold some of her jewelry (which she inconsistently described as worth $10,000.00, $12,000.00 and over $14,000.00), for $5,000.00 in order to satisfy Svendsen's debts. In the absence of either an appraisal of the jewelry, or an agreement that Svendsen would

compensate Cesareo for any such loss, the Court also disallows this part of Claim No. 10.

With respect to each of these three items, in the absence of any agreement between Cesareo and Svendsen, there is no basis for allowing these claims, in whole or in part. Cesareo has failed to establish that there was any benefit to the estate by these expenditures or losses which she allegedly incurred on behalf of the debtor, and the claimant has totally failed to meet her burden of proof as to the validity of these portions of Claim No. 10.

Accordingly, Claim No. 10 is partially allowed, in the amount of $17,924.00.

## CLAIM NO. 11

■ With respect to Claim No. 11, Cesareo has submitted a list (Claimant's Exhibit D) of estimated expenditures that she allegedly made on behalf of Svendsen, and charges for services rendered to him. Not only did Svendsen live at the claimant's house for much of the two-year period in question—he lived there for an additional eight-week period *after* she filed the proofs of claim. Although she is very vague on the subject, the claimant admits that she and Svendsen had at least a social relationship, and it is difficult to ascertain—particularly in the absence of testimony by the debtor[2]—which of the services and expenditures in question were provided gratis. Many of the items in Claim No. 11 are highly questionable, to say the least. Although her out-of-pocket automobile expenses are included in Claim No. 10, the claimant includes $5,000.00 for depreciation on her 1980 Chevrolet in Claim No. 11. When questioned about the $5,000.00 and her estimate of traveling 50,000 miles on Svendsen's behalf, she was unable to corroborate or give any plausible explanation for her method of arriving at any of the figures relating to either automobile expenses or depreciation.

2. Because the debtor failed to appear at the hearings, Cesareo's testimony is uncontradicted. Such evidence, however, is not binding on the Court. See 30 Am Jur 2d *Evidence* § 1083 (1967) at 234–35 and cases cited therein.

The claim of $500.00 for stationery (blank white paper) appears to be similarly inflated. The Court also rejects Cesareo's contention that Svendsen agreed to pay her $100.00 per week as an "administration fee."

In considering Cesareo's undocumented claims, we conclude that such claims are not founded upon any contractual agreement, as alleged, between the claimant and Svendsen. It was further apparent from testimony and evidence set forth, and from observation of the claimant's general demeanor, that the claims for time spent and expenses incurred allegedly on Svendsen's behalf are based more upon Cesareo's exaggerated impressions than upon a realistic assessment. At the hearing Cesareo stated that, besides holding other unrelated jobs, she spent 3½ days a week assisting Svendsen in his business, plus 2 days a week doing secretarial work for him. She alleged that the work performed for Svendsen was in the nature of a 24 hour a day job. Claimant's own attorney conceded the exaggerated quality of this testimony, noting that Cesareo "would have had to work 48 hours per day" to have accomplished all that she claims to have done for Svendsen. Accordingly, we conclude that claimant's requests for reimbursement are largely inflated. But, to the extent that evidence supports the contention that claimant, in fact, made expenditures and provided services to Svendsen's advantage, the Court allows Claim No. 11 at the rate of 20% on the theory of quantum meruit. This figure is admittedly subjective and an estimate without specific reason; however, in the absence of any testimony whatsoever by the debtor, we have done our best in the circumstances. The Court appreciates the objective manner in which counsel have represented their respective clients' interests. Accordingly, Claim No. 11 is allowed in the amount of $6,480.00 (20% of $32,400.00).

■ The debtor has testified at earlier hearings that a substantial portion of the estate consists of property held in trust by

him for his two minor children. Therefore, although the claims of Cesareo are allowed in the total amount of $24,404.00, the Court will not authorize any payment prior to determination by the trustee and the children's *guardians ad litem*[3] that such disbursements will not adversely affect whatever claims Mona and Nancy Svendsen may have.

---

**3.** An order appointing Joseph J. Rodio and James P. Howe as *guardians ad litem* for Mona Svendsen and Nancy Svendsen was entered on October 4, 1983.